NORTHERN ASSURANCE COMPANY OF AMERICA *vs.* RICHARD
PAYZANT & another.[1]

No. 10-P-1469.

Suffolk. March 15, 2011. - August 25, 2011.

Present: LENK, GREEN, & KATZMANN, JJ.[2]

*Insurance,* Cooperation by insured, Coverage, Arbitration. *Arbitration,* Award,
Insurance, Conduct of proceedings, Vacating award. *Public Policy.*

In a civil action seeking a judgment declaring the plaintiff insurer's rights and
duties under a policy covering a yacht, arising from the insurer's denial of
coverage due to the defendant insureds' breach of the policy's cooperation
clause, the Superior Court judge erred in allowing the motion of the in-
sureds to vacate an arbitration award in favor of the insurer, where the in-
sureds waived their right to challenge the legality of a clause of the policy
shifting to them the burden of showing prejudice arising from their breach
of the cooperation clause, given that they had chosen to arbitrate and, dur-
ing the arbitration proceedings, had affirmatively asserted that the burden-
shifting clause applied. [226-229]

CIVIL ACTION commenced in the Superior Court Department on
March 5, 2007.

A motion to vacate an arbitration award was heard by *Elizabeth
M. Fahey,* J.

*Marie Cheung-Truslow* for the plaintiff.

*Richard J. Sweeney* (*William F. Sullivan* with him) for the
defendants.

KATZMANN, J. Northern Assurance Company of America
(Northern Assurance) challenges a Superior Court order allow-
ing the motion of Nancy Jackson and Richard Payzant (col-

---

[1]Nancy Jackson. Although Nancy Jackson also is referred to as Nancy
Jackson-Soares, we use the name that appears in the underlying complaint.

[2]Justice Lenk participated in the deliberation on this case while an Associate
Justice of this court, prior to her appointment as an Associate Justice of the
Supreme Judicial Court.

lectively, insureds) to vacate an arbitration award. The matter arises out of Northern Assurance's denial of coverage under a yacht insurance policy, due to the insureds' breach of the policy's cooperation clause, and the Superior Court judge's determination that the arbitrator's decision in favor of Northern Assurance had violated public policy by impermissibly shifting to the insureds the burden to show prejudice from the breach. Because the insureds had chosen to arbitrate and, during those proceedings, they did not challenge the burden-shifting issue but, in fact, affirmatively asserted that they had the burden, we conclude that the issue was waived and not properly the basis for the judge's decision to vacate the award.

*Background.* Northern Assurance issued an insurance policy to the insureds, covering a yacht named "Blaze of Glory" for a one-year period beginning May 13, 2005. The terms of this policy were not negotiable. The policy included provisions requiring the insureds' cooperation in the event that they made a claim for coverage under the policy. The policy further stated, "[i]f you fail or refuse to comply with any of these duties there will be no coverage under this policy unless you prove that we have not been prejudiced by your failure or refusal" (cooperation clause).

On April 8, 2006, and during the period of coverage, a fire occurred at the Admiral's Hill Marina in Chelsea, damaging or destroying seventeen boats in the marina's storage dock, including the Blaze of Glory. An investigation conducted by the State police concluded that the fire was intentionally set and that the point of origin for the fire was the Blaze of Glory.

The insureds made an insurance claim for losses caused by the fire. In letters dated July 13, 2006, Northern Assurance requested that the insureds (1) produce certain information and documents from twenty enumerated categories by July 20, 2006, and (2) submit to an examination under oath on July 24, 2006. After rescheduling the date of their testimony, the insureds submitted to examinations under oath on August 7, 2006. At Jackson's examination, she produced over 400 documents on behalf of the insureds. Claiming that the insureds had not provided all of the requested documentation, Northern Assurance renewed its request in a series of letters dated September 20, October 13, and November 1, 2006. Northern Assurance also

sought a release from the insureds to allow Northern Assurance to review files prepared by the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) while investigating the fire. These files included statements made by the insureds.

The insureds responded to these letters with additional documentation. On November 15, 2006, the insureds also sent a release from Jackson authorizing Northern Assurance to view the ATF's investigative material. In a letter dated January 23, 2007, Northern Assurance, relying on Section F of the policy, denied coverage to the insureds based on Payzant's "failure to cooperate with [the insurance company's] investigation into [the] loss." The insureds responded in a letter dated February 20, 2007, stating that the denial was improper and responding to each of the reasons for the denial of coverage.

*Procedural history.* On March 5, 2007, Northern Assurance filed a complaint for declaratory relief in the Superior Court, seeking a determination of its rights and duties under the policy. The insureds filed an amended answer and counterclaims against Northern Assurance, alleging breach of contract and violation of G. L. c. 176D.[3]

On March 21, 2007, the insureds made a demand for arbitration under Section G of the policy. The parties submitted the dispute to arbitration. The arbitrator held a hearing on August 27, 2009, to determine the two issues before her: "(1.) Did the actions of the [insureds] void the applicable policy of insurance in this case? (2.) Did [Northern Assurance's] actions violate [] G. L. c. 176D?" In a written decision issued on December 11, 2009, the arbitrator found for Northern Assurance on both issues.

With regard to the first issue, the arbitrator found that the insureds' efforts to comply with Northern Assurance's requests for production of documents were insufficient and thus violated the policy's cooperation clause. Moreover, the arbitrator held that the insureds had failed to meet their burden of proving that Northern Assurance was not prejudiced by the insureds' breach of the policy's cooperation clause.

---

[3]The insureds did not state a claim under G. L. c. 93A in their first amended answer. Following the arbitration hearing, a Superior Court judge allowed the insureds' motion to file a second amended answer and counterclaims which did allege a violation of G. L. c. 93A.

The insureds filed a motion to vacate the arbitration award on February 4, 2010. On May 3, 2010, a Superior Court judge allowed the motion, stating that the arbitrator "exceeded her authority and contravened public policy" by inappropriately shifting the burden of proof from Northern Assurance to the insureds. The judge ordered that the case be scheduled for trial in the Superior Court. This appeal followed.

*Discussion.* The issue on appeal is whether the motion judge properly vacated the arbitrator's decision. "[A]rbitration awards are subject to very limited judicial review." *Weiner* v. *Commerce Ins. Co.*, 78 Mass. App. Ct. 563, 565 (2011). This court is "strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing." *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). More particularly, "[a]bsent fraud, errors of law or fact are not sufficient grounds to set aside an award." *Ibid.*, quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).

Despite these restrictions, however, "[t]he question whether an arbitrator acted in excess of his authority is always open for judicial review." *Boston Hous. Authy.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155, 161 (2010). An arbitrator exceeds his authority in granting relief "which offends public policy or which directs or requires a result contrary to express statutory provision . . . or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part." *Weiner, supra* at 566 (citations omitted). Consistent with the limited scope of judicial review of arbitral determinations, the Supreme Judicial Court recently cautioned that a judge "should not . . . undertak[e] what in effect [is] an independent, de novo evaluation of the evidence before the arbitrator." *School Comm. of Lowell* v. *Robishaw*, 456 Mass. 653, 665 n.11 (2010).

1. *Burden shifting.* As noted previously, the cooperation clause provides: "If you fail or refuse to comply with any of [the duties to cooperate listed in the policy,] there will be no coverage under this policy unless you prove that we have not been prejudiced by your failure or refusal." The parties dispute

both the legality of this burden-shifting clause and whether, even if such burden shifting is impermissible, the judge correctly determined that the arbitrator contravened public policy by applying the clause. We need not reach these questions, however, because the insureds waived their right to challenge the legality of the policy's burden-shifting clause by participating in arbitration without raising the issue and by affirmatively asserting that the clause applied.[4] See *Lumbermens Mut. Cas. Co.* v. *Malacaria*, 40 Mass. App. Ct. 184, 190 (1996) ("[insurer] participated in the arbitration proceeding without clear or affirmative objection and, thus, cannot now claim, as it does, that the coverage issue fell outside of the scope of arbitration, or that the resulting award was made in excess of the panel's authority"). See also *Turner Fisheries, Inc.* v. *Seafood Wkrs. Union I.L.A. 1572-2*, 19 Mass. App. Ct. 925, 927 (1984) (party who participated in arbitration, without raising issue that no arbitration agreement existed, could not raise issue for first time in motion to vacate award); *Couglan Constr. Co.* v. *Rockport*, 23 Mass. App. Ct. 994, 995-996 (1987) (party that participated in selection of arbitrators without objection "must be taken to have accepted [the selection procedure] by failing to object promptly"); *Barletta* v. *French*, 34 Mass. App. Ct. 87, 95 (1993) ("Absent clear evidence that the arbitrators, over the objections of the . . . party, decided issues outside the 'arena of arbitration' . . . the award of the arbitrators is binding upon the parties" [citation omitted]). Contrast *Parekh Constr., Inc.* v. *Pitt Constr. Corp.*, 31 Mass. App. Ct. 354, 358-359 (1991) ("Here, [the plaintiff] did not raise the issue of arbitrability prior to or during the proceedings, and did not participate in the arbitration proceedings. Therefore, [the plaintiff] could properly raise the issue on its application to vacate the arbitrator's award" [footnote omitted]); *Coady* v. *Ashcraft & Gerel*, 223 F.3d 1, 9 n.10 (1st Cir. 2000) (no waiver where objections to scope of arbitrators' authority were "consistently and vigorously maintained" in submissions to arbitrators and at arbitration hearings).

---

[4] At oral argument, the insureds, citing *Kelley* v. *Rossi*, 395 Mass. 659, 665 n.6 (1985), argued that because Northern Assurance raised this argument only in its reply brief on appeal, it had waived the argument. Although we could deem the argument waived, we elect to consider it. See *Smith* v. *Bell*, 63 Mass. App. Ct. 702, 725 n.8 (2005).

Not only did the insureds fail to dispute the issue of burden shifting at arbitration, they also affirmatively stated — contrary to their position on appeal — that they held the burden.[5] Contrast *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 n.5 (1995) (where assertion of controlling public policy did not conflict with department's position at arbitration, public policy issue was not waived on appeal). At oral argument, the insureds asserted that, while before the arbitrator, they were limited to making arguments that were supported by the terms of the policy, that they could not raise the issue of burden shifting until they were within a judicial proceeding, and that they in fact did question the burden shifting at the first judicial proceeding.[6] We disagree. It is true that arbitrators "may not award relief . . . [that] transcends the limits of the contract of which the agreement to arbitrate is but a part." *Plymouth-Carver*, 407 Mass. at 1007 (quotations and citation omitted). However, "[p]arties may raise before an arbitrator a challenge to his jurisdiction and, without waiving that question, may proceed to a hearing on the merits. The arbitrator should decide the jurisdictional question in the first instance, while the right to a judicial determination will be preserved." *Post Publishing Co.* v. *Cort*, 334 Mass. 199, 204 (1956).

Here, the insureds could have challenged the legality of the burden-shifting clause before the arbitrator, the arbitrator could have ruled on this issue, and the right to a judicial determination would have been preserved. See *ibid.* Moreover, the insureds also could have simply refrained from demanding arbitration after Northern Assurance brought its initial declaratory action in the Superior Court. See *Tumim* v. *Palefsky*, 7 Mass. App. Ct. 847, 847 (1979) (arbitration clause is not jurisdictional and is waived by parties if they proceed to trial without making request for arbitration). By choosing to arbitrate and, in those proceedings, failing to challenge the burden-shifting clause and

[5]In their supplemental arbitration brief, the insureds stated, "Mr. Payzant bears the burden of proving that he was cooperative and that Northern Assurance was not materially prejudiced by his alleged lack of cooperation . . . ."

[6]It is not clear from the record whether the insureds did raise the burden-shifting issue in their motion to vacate the arbitration award. Even if the issue was raised, however, raising the issue for the first time in the motion to vacate is too late. *Turner Fisheries*, 19 Mass. App. Ct. at 927.

affirmatively asserting that the burden-shifting clause applied, the insureds waived that issue.[7] See cases cited, *supra*. See also *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003) ("Arbitration would have little value if it were merely an intermediate step between a grievance and litigation in the courts").

2. *Other issues.* The insureds concede that the only alleged violation of public policy was the arbitrator's application of the policy's burden-shifting clause, which we need not reach for the reasons discussed, *supra*. Since there are no other arguments that the arbitrator exceeded her authority, none of the arbitrator's other findings of law or fact is properly before this court on appeal.[8] See *Lynn*, 435 Mass. at 61-62.

*Conclusion.* The Superior Court order allowing the motion to vacate the arbitration award is reversed and the arbitrator's decision is reinstated.

*So ordered.*

---

[7] We note that Section G of the policy states that any procedural issue will be decided in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA Rules). See *Lumbermens*, 40 Mass. App. Ct. at 189 (applying American Arbitration Association Accident Claims Arbitration Rules, which governed arbitration proceeding at issue, to determine issue of waiver). Rule 7(c) of the AAA Rules states, "A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection." American Arbitration Association, Commercial Arbitration Rules, as amended and effective June 1, 2009. Thus, the insureds also may have waived their burden-shifting argument by failing to comply with the procedure laid out in rule 7(c).

[8] As such, we express no opinion regarding the arbitrator's determinations with respect to the two issues presented before her.